

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 4, 2022**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |
| JAMES DONDERO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | Adversary Proceeding No. 21-03051 |
| | § | |
| ALVAREZ & MARSAL CRF MANAGEMENT, | § | |
| LLC, and FARALLON CAPITAL | § | |
| MANAGEMENT LLC, | § | |
| Respondents. | § | |

---

## MEMORANDUM OPINION AND ORDER GRANTING JAMES DONDERO'S MOTION TO REMAND ADVERSARY PROCEEDING TO STATE COURT, DENYING FEE REIMBURSEMENT REQUEST, AND RELATED RULINGS

I.      **Introduction**

Before this court is a motion to remand the above-referenced adversary proceeding (the "Removed Proceeding" or, sometimes, the "Rule 202 Proceeding") back to the 95th Judicial District Court of Dallas County, Texas[1] ("Texas State Court"), where it was originally filed.

The Removed Proceeding is what is sometimes referred to, historically, as a request for an "equitable bill of discovery"—that is, *a pre-suit discovery request,* pursuant to Texas Rule of Civil Procedure 202 ("Rule 202").  It was commenced by James Dondero ("Dondero")—the founder and former chief executive officer ("CEO") of Highland Capital Management, L.P. (the "Reorganized Debtor" or "Highland").[2]  It was commenced against Alvarez & Marsal CRF Management, LLC ("Alvarez") and Farallon Capital Management LLC ("Farallon").

As further explained below, Dondero seeks discovery from Alvarez and Farallon regarding certain *claims-trading* that occurred shortly after the Chapter 11 plan was confirmed in the Highland bankruptcy case.  Alvarez and Farallon removed the Rule 202 Proceeding to this court, pursuant to 28 U.S.C. § 1452(a)—asserting that it is "related to" the Highland bankruptcy case, as contemplated by 28 U.S.C. § 1334(b). Dondero argues in his motion to remand that a *pre-suit discovery mechanism under Rule 202* is not a "claim" or "cause of action" in a "civil action" that is subject to removal under 28 U.S.C. § 1452(a)—specifically, he urges that there is no actual, live case or controversy yet.

---

[1] Cause No. DC-21-09534.

[2] Dondero no longer controls Highland, as a result of a new corporate governance structure negotiated with the unsecured creditors committee and approved by the bankruptcy court during the bankruptcy case.

The court heard oral arguments on the motion to remand[3] on October 12, 2021 and took the matter under advisement. The court now rules that—in spite of the apparent relatedness to the Highland bankruptcy case—the Rule 202 Proceeding is not removable and the motion to remand must be granted. This shall constitute the court's findings of fact and conclusions of law regarding the same.

## II. Relevant Facts.

Highland filed a voluntary Chapter 11 bankruptcy petition on October 16, 2019. The bankruptcy case has been extremely contentious. After numerous skirmishes, global mediation, major settlements, and more skirmishes, the bankruptcy court confirmed a Chapter 11 plan on February 22, 2021. The plan was supported by the Official Committee of Unsecured Creditors ("UCC") and an overwhelming dollar amount of creditors. Dondero (again, founder and former CEO of Highland), and certain entities related to him, objected to the plan. Their objections were overruled, and they have appealed the Confirmation Order. There was no stay pending appeal, and the plan went effective on August 11, 2021. DE # 2700.

The UCC members in the bankruptcy case originally consisted of: (i) the Redeemer Committee of the Highland Crusader Fund (the "Redeemer Committee"), (ii) Acis Capital Management, L.P. and Acis Capital Management GP, LLP (collectively, "Acis"), (iii) UBS Securities LLC and UBS AG London Branch (collectively, "UBS"), and (iv) Meta-E Discovery LLC.

---

[3] *See* DE # 4 in the RP as well as the Objection, Response, and Reply at DE ## 11, 14 & 16 in the RP. Note: all references herein to "DE # ___" shall refer to the docket entry number at which a pleading appears in the docket maintained in the Highland main bankruptcy case. All references to "DE # ___ in the RP" refer to the docket entry number at which a pleading appears in the docket maintained in the Removed Proceeding.

After confirmation, but prior to the effective date of the plan, certain UCC members sold their proofs of claim that they filed in the bankruptcy case (which claims had at one time been objected-to but were later compromised after mediation).  Specifically, on April 16, 2021, UCC member Acis filed certain notices indicating that it had transferred its proofs of claims in the bankruptcy case to an entity known as ***Muck Holdings, LLC.*** DE ## 2211, 2212, & 2215.  On April 30, 2021, another UCC member, the Redeemer Committee, filed certain notices[4] that it had transferred its proofs of claims in the bankruptcy case to an entity known as ***Jessup Holdings, LLC***. DE ## 2261 & 2262.  The U.S. Trustee later filed a notice with the bankruptcy court on June 25, 2021 indicating that Acis and the Redeemer Committee had resigned their positions on the UCC[5] (note that the UCC was still in place—albeit in a post-confirmation phase of the case—since the effective date of the plan had not yet occurred). DE # 2485.  Finally, on August 9, 2021, another UCC member, UBS, filed certain notices that it had transferred a ***portion*** of its proofs of claims in the bankruptcy case to ***Muck Holdings, LLC.*** DE ## 2697 & 2698.  All transfers of the above-mentioned claims were done without the need for bankruptcy court approval.  *See* Fed. R. Bankr. Proc. 3001(e)(2) (merely requiring a notice and evidence of any transfer of a proof of claim to be filed by the transferee and 21-days' notice to be given to the ***transferor;*** the ***transferor*** shall have 21 days to object or else the transferee shall be substituted as the claimant in place of the transferor; if the ***transferor*** files an objection, the court will hold a hearing on notice and enter an appropriate order).

---

[4] One of the notices is actually for a $50,000 proof of claim filed by Highland Crusader Offshore Partners, L.P., Highland Crusader Fund, L.P., Highland Crusader Fund, Ltd., and Highland Crusader Fund II, Ltd.

[5] The Notice does not indicate on what date they resigned.

Dondero filed the Removed Proceeding wanting pre-suit discovery from Alvarez and Farallon regarding these transfers of claims. Why Alvarez and Farallon?

*Farallon* is an investment fund which is affiliated with *Muck Holdings*, the entity that purchased the claims of Acis and UBS. Muck Holdings also purchased proofs of claim from other creditors who were not UCC members during the same time frame.[6]

*Alvarez* acts as the current investment manager to the *Highland Crusader Funds*,[7] which, again, sold their proofs of claim to *Jessup Holdings*. Alvarez and Farallon assert that they have no affiliation with Jessup Holdings, although Dondero has asserted that Jessup Holdings is related to Farallon.

In the Rule 202 Proceeding filed by Dondero, he seeks an order directing corporate representatives of Farallon and Alvarez to sit for depositions and, also, to produce certain documents. Dondero seeks to investigate the sale of the proofs of claim by the Redeemer Committee through its investment manager, Alvarez, as well as the sale of other proofs of claim to Jessup Holdings or Muck Holdings.

In the Rule 202 Proceeding, Dondero alleges that something was "highly irregular" with regard to the claims-trading set forth above (including possible torts, such as breaches of fiduciary duties by UCC members). Further, in the Rule 202 Proceeding, Dondero states that James Seery (the man who replaced him as Highland's CEO during the bankruptcy case, and is now the

---

[6] The proofs of claim include those of : (i) Harbour Vest 2017 Global Fund, LP., HarbourVest 2017 Global AIF LP., HarbourVest Dover Street IX Investment, LP., HV International VIII Secondary LP., HarbourVest Skew Base AIF LP., and HarbourVest Partners, LP (collectively, "HarbourVest"); and (ii) Josh Terry (the current owner of Acis who purchased his equity through initiating and prosecuting the involuntary bankruptcy of Acis filed in 2018, while Acis was under Highland and Dondero's control).

[7] Highland previously managed the Highland Crusader Funds. Dondero represents that he personally is an investor in the Highland Crusader Funds.

Claimant Trustee of the post-confirmation Claimant Trust created under the confirmed plan) has an "age-old connection to Farallon" and was the catalyst behind the sale of the proofs of claim, to benefit himself through the sales (*e.g.,* Seery allegedly wanted creditors who were friendly to him and Farallon is allegedly friendly to him).[8] It appears that Dondero may be seeking discovery as a means to craft a lawsuit against Seery (as well as Farallon and Alvarez)—despite being previously sanctioned, along with related parties,[9] by this court when he attempted to add Seery to a lawsuit filed in the United States District Court for the Northern District of Texas in violation of this court's prior gatekeeping orders.[10] The gatekeeping orders prevent Seery from being sued for his actions taken in the bankruptcy case, in his role as CEO and CRO of the Highland, without the bankruptcy court first finding that the claims sought to be brought against him are colorable. Disturbingly, Seery again appears to be at the center of Dondero's allegations of wrongful acts, as his name appears nine times in the petition that commenced the Rule 202 Proceeding.

The Rule 202 Proceeding was removed by the Defendants pursuant to 28 U.S.C. § 1452 and Dondero promptly filed a motion for remand back to the state court. The relevant case law suggests that this court must engage in a two-part analysis in deciding the motion for remand.

---

[8] The Rule 202 Petition even alleges that Seery may have violated the "Registered Investment Advisor Act 15 U.S.C. § 80b-1 et seq., among other things" in connection with Farallon's purchase of claims, supposedly because he had material non-public information at the time that he recommended that Farallon purchase such claims. Verified Petition to Take Deposition Before Suit and Seek Document, Appendix to Notice of Removal, Exhibit 1 at ¶ 23, DE # 1 in the RP. The Rule 202 Petition also alleges that "there is reason to doubt" that Alvarez sought or obtained the highest price for the sale of its claims which "would have injured Dondero as an investor in the Crusader Funds." *Id.* ¶ 24. Finally, the Rule 202 Petition contends that certain non-parties failed to "obtain[] Court approval to sell their respective claims." *Id.* ¶ 18. As noted above, no court approval was necessary under Fed. R. Bankr. Proc. 3001(e)(2)—something of which a typical state court judge (without bankruptcy law expertise) might be unaware.

[9] Along with Dondero, this court found Charitable DAF Fund, L.P., CLO Holdco, Ltd., Mark Patrick, and Sbaiti & Company, PLLC (the same firm that filed the Removed Proceeding) in contempt of court for violating gatekeeper orders in the bankruptcy case.

[10] Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course, Bankruptcy Case No. 19-34054, DE # 339; Order Approving Debtor's Motion Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Retention of James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative Nunc Pro Tunc to March 15, 2020, Bankruptcy Case No. 19-34054, DE # 854.

First, this court must decide whether a proceeding under Rule 202 is a "claim" or "cause of action" in a "civil action," as contemplated by 28 U.S.C. § 1452. Further, assuming it is, the bankruptcy court must determine whether the court has subject matter jurisdiction over the Rule 202 Proceeding as either "related to," "arising in," or "arising under" the Bankruptcy Code pursuant to 28 U.S.C. § 1334(b).

Guided by the case law described below, the bankruptcy court holds that the Rule 202 Proceeding is not choate enough to be a "claim" or "cause of action" in a "civil action." It is also not choate enough for bankruptcy subject matter jurisdiction to exist. While this court has grave concerns about the ultimate direction the Rule 202 Proceeding might be leading (as further explained below), the motion for remand must be ***granted***.

### III. Bankruptcy Removal Pursuant to 28 U.S.C. § 1452

Removal of the Rule 202 Proceeding was effectuated under 28 U.S.C. § 1452 by Alvarez and Farallon. The language under Section 1452(a) provides:

> A party may remove any ***claim*** or ***cause of action*** in a ***civil action*** other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has ***jurisdiction*** of such claim or cause of action ***under section 1334*** of this title.

28 U.S.C. § 1452(a) (emphasis added). Thus, to properly effectuate removal under this statute, there must be a ***claim*** or ***cause of action*** in a ***civil action*** over which there would be bankruptcy subject matter jurisdiction, pursuant to 28 U.S.C. § 1334—which, in turn, provides that there will be bankruptcy subject matter jurisdiction over "***civil proceedings arising under*** title 11 or ***arising in*** or ***related to*** a case under title 11." 28 U.S.C. § 1334(b). Alvarez and Farallon argue that the Rule 202 Proceeding most definitely is "related to" the Highland bankruptcy case, as it

7

directly impacts the administration of the bankruptcy case and estate and implicates orders of the bankruptcy court. Alvarez and Farallon also argue that the Rule 202 Proceeding is a "core" matter pursuant to 28 U.S.C. § 157(b)(2)(A) & (O).

Dondero stresses that this court's removal jurisdiction is limited to "claims" or "causes of action" that are part of a "civil action." He argues that, since a petition brought under Rule 202 is simply a pre-suit discovery mechanism and not a stand-alone cause of action seeking remedies, it is not a "civil action" subject to removal. He also states that there is no ripe controversy. As such, he argues that the bankruptcy court lacks subject matter jurisdiction over the Rule 202 Proceeding and remand is therefore mandatory.

## IV. Whether a Texas Rule 202 Proceeding is a Removable "Claim" or "Cause of Action" in a "Civil Action"

So what exactly is a Rule 202 proceeding? What is its nature? Is it something that can be removed or not?

As for its nature, Rule 202 is a discovery tool that was added to the Texas Rules of Civil Procedure in the year 1999 and is a combination of two earlier rules (former Tex. R. Civ. Pro. 183—allowing for a deposition to perpetrate testimony—and former Tex. R. Civ. Pro. 737—the equitable bill of discovery).[11] Specifically, Texas Rule 202.1 permits a petitioner to seek a state court order permitting it to conduct pre-litigation depositions to investigate potential claims. It is phrased as follows:

> 202.1 Generally. A person may petition the court for an order authorizing the taking of a deposition on oral examination or written questions either:

---

[11] For a good historical description of its origin, *see In re Does* 1-10, 242 S.W.3d 805, 816 (Tex. App.—Texarkana 2007). *See also* JEFFREY LIANG, REVERSE ERIE AND TEXAS RULE 202: FEDERAL IMPLICATIONS OF TEXAS PRE-SUIT DISCOVERY, 89 TEX. L. REV. 1491, 1493 (2011) (mentioning Texas is the only state granting such broad pre-suit discovery powers to investigate a potential claim, even when said claim is "highly speculative").

(a) to perpetuate or obtain the person's own testimony or that of any other person for use in an anticipated suit; or

(b) to investigate a potential claim or suit.

Thus, subsection (a) essentially contemplates that if a witness is expected to become unavailable due to such things as death or leaving a jurisdiction, and there is an ***anticipated suit*** on the horizon, a person might seek to take discovery before the anticipated lawsuit is even filed, utilizing this rule. Alternatively, pursuant to subsection (b), a person may even seek pre-suit discovery to investigate whether a legal action ***might be warranted***. It appears to be this latter situation that is motivating Dondero's Rule 202 Proceeding.

The case law regarding removal of a Rule 202 petition in a ***bankruptcy*** context (*i.e.*, pursuant to 28 U.S.C. § 1452) is almost non-existent. Perhaps this is because the scenario before this court rarely presents itself. Instead, a person seeking pre-suit discovery might file a motion to take a Bankruptcy Rule 2004 examination.[12] Or, perhaps a person seeking pre-suit discovery might file a request to take an examination pursuant to Fed. R. Civ. Pro. 27.[13] In any event, the parties here have only cited one relevant opinion in a bankruptcy context (and it happens to be an unpublished opinion). The opinion involved former employees of the bankrupt Enron Corporation, who were wanting to take Rule 202 depositions of representatives of several banks and other third parties regarding what these persons knew and when, pertaining to Enron's business transactions, and to explore whether the former Enron employees might have claims against them.

---

[12] Bankruptcy Rule 2004(a) provides that, on motion of any party in interest, the court may order the examination of any entity. Bankruptcy Rule 2004(b) elaborates that the scope of any such examination may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate," among other things. Fed. R. Bankr. Pro. 2004(a) & (b). Bankruptcy Rule 2004 is arguably a much broader rule than Texas Rule 202.

[13] Federal Rule 27 (applicable in bankruptcy cases, pursuant to Fed. R. Bankr. Pro. 7027) permits a person who wants to perpetrate testimony to file a verified petition asking permission to depose a named person if the petitioner expects to be a party to an action but cannot presently bring it or cause it to be brought." Fed. R. Civ. Pro. 27(a). Rule 27 actually appears to be narrower than Texas Rule 27.

*In re Enron Corporation Securities*, MDL-1446, Civil Action No. H-01-3624 Consolidated Cases, Civil Action No. H-02-3193, DE # 1106 (S.D. Tex. Oct. 23, 2002). The Enron employees had filed their Rule 202 petition in a Harris County, Texas (Houston) state court. The targets of the desired discovery removed the Rule 202 petition to the federal district court in the Southern District of Texas—citing several statutes, including 28 U.S.C. §§ 1331, 1334, 1441 and 1452. The District Judge (Melinda Harmon) stated that "[b]oth Texas and federal district courts have held that a Rule 202 request is an ancillary proceeding, not a separate civil suit, and not appropriate for removal." *Id.* at p. 3 (citing numerous cases involving removal pursuant to 28 U.S.C. §§ 1441 and 1442). Judge Harmon's comments regarding Rule 202 petitions were actually *dicta*, since the issue before the court was whether to ***consolidate*** the removed Rule 202 petition with other seemingly related litigation (*i.e.*, certain securities and ERISA litigation involving some of the same persons/entities that were named in the Rule 202 petition), and another District Judge (Sim Lake) had a pending motion for remand before him. But Judge Harmon essentially denied the motion to consolidate, assuming that Judge Lake would ultimately remand the Rule 202 petition. After citing the various cases that had held that a Rule 202 petition is not a "civil action," she then held: "[B]ecause Petitioners seek pre-suit depositions only to determine whether they may have any claims against Respondents prior to consideration of whether to file a civil action, this Court finds that this proceeding is too inchoate, premature, and attenuated to 'conceivably affect' Enron Corporation's bankruptcy and thus provide the court with 'related to' jurisdiction, although if it leads to a civil suit that may be 'related to' Enron's bankruptcy, the issue may be raised in that action." *Id.* at p. 5.

Outside of the bankruptcy context, several federal district courts and magistrates have examined removal and remand of Rule 202 petitions, pursuant to 28 U.S.C. § 1441. Section 1441

is, of course, the general federal removal statute constructed to enable parties to remove an action

from state court to federal court if such federal court would have jurisdiction over the matter.

Section 1441(a) provides the following language:

> Except as otherwise expressly provided by Act of Congress, **any civil action** brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

The key term to be interpreted in both Sections 1441 and 1452 is "civil action"—although

Section 1452 speaks in terms of removal of any **claim** or **cause of action** in a **civil action** (in other

words, with bankruptcy removal, one may remove subparts or portions of a civil action, as opposed

to the whole civil action).  In any event, both statutes are similar in requiring a state court matter

to be a "civil action" in order for it to be properly removed to federal court.  However, neither

statute provides a definition of a "civil action."

Almost all of the Texas federal courts that have examined the issue have determined that a

petition under Rule 202 is not a "civil action" as contemplated by Section 1441 and, thus, removal

is improper and remand is proper.  Some of the cases have focused on whether a Rule 202 petition

is a "civil action" (usually finding it is not) and some have focused more on the "federal subject

matter jurisdiction" prong (again, usually finding no federal subject matter jurisdiction when there

is not even an actual claim or cause of action articulated yet to evaluate). The cases that have

opined that a Rule 202 petition is not removable as a civil action include the following: *In re Enable*

*Commerce, Inc.,* 256 F.R.D. 527, 533 (N.D. Tex. 2009) (involving removal of a Rule 202 petition

based on diversity jurisdiction; in remanding, Judge Fitzwater first noted that "[t]he majority of

Texas courts that have considered whether a Rule 202 proceeding is removable have held that it is

not" (citing various cases); the court thereafter determined that remand was appropriate because

the party seeking discovery did not allege a claim that was likely greater than $75,000 and the removing party had not adduced facts that satisfied the minimum jurisdictional amount for federal jurisdiction; Judge Fitzwater noted that this was a problem with removal of Rule 202 proceedings—since a claim has technically not been asserted yet, the minimum threshold for diversity cannot be met); *Linzy v. Cedar Hill Indep. Sch. Dist.*, 2001 U.S. Dist. LEXIS 11845, *5 (N.D. Tex. Aug. 8, 2001) (Magistrate Judge Sanderson holding that a Rule 202 petition is not a "civil action" for purposes of establishing claims subject to removal and remanding the same for lack of subject matter jurisdiction; the context was a motion for summary judgment in a civil rights lawsuit brought pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and also pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction); the plaintiff in the civil rights lawsuit had argued that a Rule 202 investigatory proceeding that his child's school district had previously filed against him was malicious prosecution; in evaluating the nature of a Rule 202 proceeding, Judge Sanderson stated: "Notwithstanding Plaintiff's characterization of the Rule 202 proceeding as a lawsuit, it is clear under Texas state law that such a proceeding does not constitute a civil proceeding brought against Plaintiff, and thus there is no genuine issue of fact from which a jury could find that [any member of the school district] instituted a civil action against him. Thus, no malicious prosecution and summary judgment will be granted in their favor"), *aff'd on other grounds*, 37 Fed. Appx. 90, 2002 WL 1021883, at *2 (5th Cir. May 9, 2002) ("We affirm the dismissal of Linzy's malicious prosecution claim because the state court granted [the] Rule 202 petition . . . We need not decide whether Texas courts would characterize a Rule 202 petition as a 'proceeding' that can form the basis of a wrongful prosecution action."); *Mayfield-George v. Texas Rehabilitation Comm'n,* 197 F.R.D. 280, 283 (N.D. Tex. 2000) (Judge Kendall) (a Rule 202 petition sought depositions of respondents' employees to investigate whether petitioners could

bring causes of action against Respondents under the Texas Tort Claims Act, 28 U.S.C. § 1983, Titles VII and IX of the Civil Rights Act of 1964, and Title II of the Americans with Disabilities Act; respondents removed the Rule 202 petition to the federal district court pursuant to 28 U.S.C. § 1441(b) and petitioners sought remand; the court held "the Petition is not a 'civil action' under § 1441(b) because it asserts no claim or cause of action upon which relief can be granted. . . . It is merely a petition for an order authorizing the taking of a deposition for use in an anticipated suit, maybe with federal question jurisdiction, maybe not"); *Sawyer v. E.I. du Pont de Nemours & Co.,* No. CIV.A. 06-1420, 2006 WL 1804614, *2 (S.D. Tex. June 28, 2006) (in a motion for remand context, the court agreed with various cited decisions holding that a Texas Rule 202 proceeding ordinarily is not a removable "civil action" over which the federal courts have jurisdiction, noting that the Rule 202 petition "is simply a request for discovery that may or may not eventually lead to federal claims over which this Court would have subject matter jurisdiction, and it therefore belongs where it was filed—in state court"); *Davidson v. S. Farm Bureau Cas. Ins. Co.*, No. H-05-03607, 2006 WL 1716075 (S.D. Tex. 2006) (this case arose from Ms. Davidson's claims for insurance benefits following an automobile accident involving an underinsured motorist; after coverage was denied, she filed a Rule 202 petition in state court, seeking discovery from the insurance company and the insurance adjuster to determine what, if any, claims Davidson may have had arising out of the accident and the denial of her insurance claim; after removal by the discovery targets, pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441—asserting that the amount in controversy requirement was satisfied because, although Davidson's Rule 202 petition had made no claim for any specific monetary amount, a letter from Davidson's counsel had previously demanded the "available limits" of the underinsured motorist policy, which totaled over $75,000— and on a subsequent motion for remand by Ms. Davidson, the court held that removal of the

petition to federal court was improper, and that remand to state court was required: "Because this Court concludes that a petition for discovery under Rule 202 does not constitute the filing of a civil lawsuit, the Court joins others within this district, which have held that a Rule 202 petition is not a 'civil action' removable under 28 U.S.C. § 1441. . . . Alternatively, even if a petition for discovery under Rule 202 were removable to federal court, the Court cannot conclude that it has subject matter jurisdiction over the instant petition, because the parties lack complete diversity."); *McCrary v. Kansas City S. R.R.*, 121 F. Supp. 2d 566, 569 (E.D. Tex. 2000) ("Rule 202 Requests are not generally removable under § 1441," but notes at footnote 4 that: "The court makes no determination of whether Rule 202 Requests are removable pursuant to other federal statutes such as the All Writs Act, 28 U.S.C. § 1651.").

On the opposite side, there are four cases cited by Alvarez and Farallon in which federal district courts determined that an action under Rule 202 *is* a "civil action" which can be removed. The primary case is *In re Texas*, 110 F. Supp. 2d 514, 519 (E.D. Tex. 2000), *rev'd on other grounds*, 259 F.3d 387 (5th Cir. 2001). *In re Texas* contains a compelling analysis but, ultimately, this court does not find it to be very helpful—particularly because of certain words of the Fifth Circuit on appeal (although the Fifth Circuit did not specifically rule on the "civil action" question). The other three cases cited by Alvarez and Farallon appear to be anomalies, for reasons that will be explained below. *Cong v. ConocoPhillips Co.*, 2016 WL 6603244 (S.D. Tex. 2016) (Judge Lynn Hughes); *Advanced Orthopedic Designs, L.L.C. v. Shinseki*, 886 F. Supp. 2d 546, 552–53 (W.D. Tex. 2012); *Page v. Liberty Life Assur. Co. of Bos.*, 2006 WL 2828820, at *1–3 (N.D. Tex. Oct. 3, 2006) (Judge McBryde).

*In re Texas* involved a Rule 202 petition that was filed after the much-publicized federal lawsuit that the former Texas Attorney General filed against the tobacco industry to hold them

accountable for the deaths and sickness of thousands of Texans, attributable to cigarettes. The former Attorney General had hired various lawyers in the private sector ("Private Counsel") to file the lawsuit (the "Tobacco Litigation"). During the 22 months that followed, the Tobacco Litigation generated nineteen hundred docket entries, including thousands of pages of briefing. Approximately 23 million documents were produced; hundreds of depositions were taken; 50,000 exhibits were listed; and 1,500 witnesses were designated. Four hundred seventy-two motions were filed, and 21 hearings were conducted. The State and the Tobacco Industry defendants ultimately achieved a settlement before trial. The settlement called for the State to dismiss its claims against the Tobacco Industry in exchange for $15.3 billion. The terms of the settlement were memorialized in the Comprehensive Settlement and Release ("CSA"). Finalization of the CSA was made contingent upon the federal district court's approval. The federal court ultimately entered a final judgment in the Tobacco Litigation and adopted and incorporated the CSA as an enforceable order. The approval order stated, among other things:

> It is [ ] ordered that this Court shall have exclusive jurisdiction over the provisions of the Comprehensive Settlement Agreement and Release, this Order[,] and the Final Judgment. Agreement and Release, this Order[,] and the Final Judgment. All persons in privity with the parties, including all persons represented by the parties, who seek to raise any objections or challenges in any forum to any provision of this Judgment are hereby enjoined from proceeding in any other state or federal court.

*In re Texas*, 110 F. Supp. 2d at 515-516. Later, Private Counsel submitted a motion for approval of their attorneys' fees and the federal court entered a memorandum opinion and order which concluded that the amount of attorneys' fees that Private Counsel was due under the engagement agreement with the State of Texas—about $2.3 billion—was reasonable.

Suffice it to say there were many disputes in the federal district court regarding this matter for some time. Certain representatives of the State of Texas thought the former Attorney General

had exceeded his authority in making his deal with Private Counsel. In the midst of all of these disputes, the State (through certain members of the Texas legislature and the Governor intervening) filed a Rule 202 petition in state court (*i.e.,* the district court of Harris County, Texas). The Rule 202 petition moved the state district court to allow the State to "investigate potential claims it believes it may possess for conversion and breach of fiduciary duty" against Private Counsel. Specifically, the State sought to depose Private Counsel as to such things as whether the parties to the engagement agreement engaged in the improper exchange of consideration so that Private Counsel could obtain the contract; whether Private Counsel knew or should have known that the engagement agreement was unenforceable; and whether Private Counsel used the relationship to benefit their own personal interests to the detriment of the State. Not surprisingly, Private Counsel removed the state court proceeding to the federal district court, contending that the court that had presided over the Tobacco Litigation had jurisdiction over the State's Rule 202 petition because (1) the petition raised a question of federal law and was therefore removable pursuant to 28 U.S.C. § 1441; (2) the matters raised in the petition were ancillary and supplemental to the Tobacco Litigation and the court's orders entered therein; and (3) the petition implicated the orders of the court in the Tobacco Litigation and was therefore subject to removal under the All Writs Act, 28 U.S.C. § 1651. Soon thereafter, the State filed a motion to remand, arguing, among other things, that the federal district court lacked jurisdiction over the Rule 202 proceeding because the proceeding was not a "civil action"—it lacked the characteristics of a "full-blown lawsuit."

The federal district court (Judge Folsom) issued a very well-reasoned opinion, noting among other things, that "civil action" was not defined in the statute, parsing through various other statutes in Title 28, and opined that the term "civil action" might be meant ***not*** to define a civil proceeding with a certain level of involvement, but instead ***to distinguish civil proceedings from***

***criminal ones***. Since the statute is less-than-definitive on the question of what is a civil action, the court turned to certain legislative history and case law, dating back to the nineteenth century. The court ultimately concluded that a Rule 202 proceeding is a "civil action" because it possesses all the elements of a judicial proceeding: there is a controversy between parties; there are pleadings; relief is sought (the petitioner prays for a court order authorizing the taking of depositions); a judicial determination is required—specifically, whether authorizing depositions may prevent injustice or, on balance, will not be unduly burdensome; and both parties will be required to adhere to the state court's orders. The district court also held that it had federal subject matter jurisdiction pursuant to the All Writs Act. The district court denied the motion for remand.

The Fifth Circuit reversed on appeal, focusing on the exercise of federal subject matter jurisdiction pursuant to the All Writs Act: "We find no basis in this case for removal jurisdiction under the All Writs Act. We further conclude that the Texas Rule 202 discovery proceeding presents a premature basis for asserting the district court's jurisdiction to protect the settlement agreement. We therefore reverse with instructions to remand this action to the state court from whence it came." *Texas v. Real Parties in Interest*, 259 F.3d 387, 388-89 (5th Cir. 2001). While the Fifth Circuit focused primarily on the All Writs Act, its language in doing so hints at its overall view of the removability of Rule 202 proceedings:

> Even accepting the remote proposition that removal still can be proper under the All Writs Act in the face of "extraordinary circumstances," and further accepting that the procedural requirements for removal under § 1441 pose no barrier to the use of the All Writs Act to bring a state court matter into federal court, the Rule 202 proceeding in this case clearly does not present such facts or circumstances. ***The proceeding is only an investigatory tool***. Both the State and Private Counsel can only speculate as to the eventual outcome of the probe. This pending state court action over which the district court exercised § 1651 jurisdiction ultimately may or may not pose an actual threat to the federal tobacco settlement. The investigation could lead to no further action, or it could result in a cause of action not contemplated or covered by the settlement agreement; or, indeed, it may

lead to the institution of a cause of action for which the invocation of, at least, the injunctive powers of the All Writs Act would be timely and appropriate. In any event, the federal courts cannot preclude the State of Texas from investigating potential claims in the milieu of the Texas courts—pursuant to Texas law—unless and until such investigation poses an actual threat to the settlement agreement. Private Counsel's claim that such a threat exists is premature.

*Id.* at 394-95 (emphasis added). Bottom line, while the Fifth Circuit reversed on the basis of improper utilization of the All Writs Act, it still seemed to echo the theme of most federal district courts that have held that a Rule 202 proceeding is "only an investigatory tool" and is simply too inchoate to constitute a removable cause of action.

As the court indicated earlier, three other cases cited by Alvarez and Farallon as supportive of their position seem to be anomalies: *Cong v. ConocoPhillips Co.*, 2016 WL 6603244 (S.D. Tex. 2016) (in a two-page opinion, Judge Lynn Hughes denied remand of a Rule 202 proceeding that had been filed by 167 Chinese fishermen against ConocoPhillips pertaining to an oil leak that occurred in China's Bohai Bay; not only did the court consider the motion for remand untimely, but the discovery also seemed related to an already-pending matter in federal court and implicated federal maritime law and no Texas law); *Page v. Liberty Life Assur. Co. of Bos.*, 2006 WL 2828820, at *1–3 (N.D. Tex. 2006) (Judge McBryde first ruled that a Rule 202 Proceeding is a removable civil action, citing the *In re Texas* district court opinion, but the court nevertheless granted remand, concluding that the discovery target did not carry its burden to demonstrate that the petitioner's potential cause of action (that was ERISA-related) was subject to the complete federal preemption doctrine so as to potentially justify removal); *Advanced Orthopedic Designs, L.L.C. v. Shinseki*, 886 F. Supp. 2d 546, 552–53 (W.D. Tex. 2012) (dealt with removal under section 1442, not section 1441, which pertains to removal when a federal agency or federal officer is involved as defendant/target; on ***November 9, 2011*** there was an ***amendment*** to 28 U.S.C. § 1442 which provided that the term "civil action" includes "any proceeding (whether or not

ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents is sought or issued"; in light of this amendment, the magistrate judge rejected the petitioner's argument that a petition for pre-suit discovery sought in state court pursuant to Rule 202 is not removable, where a federal agency or officer is the target).

## V.    Conclusion

This court is obviously duty-bound to follow the law. The vast majority of the reported case law dealing with motions to remand Rule 202 petitions holds that removal of these petitions to federal courts is not proper and, thus, remand is required. There is one compelling opinion to the contrary (*In re Texas*), and the Fifth Circuit ultimately reversed the opinion—although focusing more on the federal subject matter conundrum than the question of whether a Rule 202 proceeding is a "civil action" subject to removal.  As indicated earlier, these removal/remand situations require a two-prong analysis:  (a) is a Rule 202 proceeding a "civil action"? (the majority of courts hold no); and (b) assuming it is a "civil action," would there be federal subject matter jurisdiction in the federal courts? (again, the majority of courts hold no).  The vexing part of the analysis is that often, the courts have focused less on the "civil action" prong and ultimately more on the "subject matter jurisdiction" prong—determining no subject matter jurisdiction exists because no federal cause of action has clearly been articulated yet. And in these holdings, there is a strong theme of federalism. As Judge Fitzwater noted in the *Enable Commerce* case, [f]ederal courts are courts of limited jurisdiction." *Enable Commerce, Inc.*, 256 F.R.D. at 533 (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.2001)). A federal court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.* "The federal removal statute, 28 U.S.C. § 1441 (1997), is subject to strict construction" and "implicates important federalism concerns." *Id.* (citing *Frank v. Bear Stearns & Co.*, 128 F.3d

919, 922 (5th Cir.1997)). "The removing party bears the burden of establishing that federal jurisdiction exists." *Id.* (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995)). "[D]oubts about whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir.2000) (citing Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir.1988)).

The vexing part of all this is that, as noted earlier, ***only one of the cases cited by the parties herein involved a bankruptcy case (Enron) where there might have been "related to" jurisdiction pursuant to 28 U.S.C. § 1334***. The court in *Enron* nevertheless thought remand was always appropriate with regard to Rule 202 petitions. This court has some doubt whether the reasoning of all the numerous non-bankruptcy-context removal cases cited herein should apply with regard to ***bankruptcy*** removals—since 28 U.S.C. § 1334(b) grants much broader subject matter jurisdiction than either 28 U.S.C. §§ 1331 or 1332 (*i.e.,* 28 U.S.C. § 1334(b) contemplates "related to" jurisdiction, not merely "arising under" jurisdiction).[14] Does a removal pursuant to 28 U.S.C. § 1452 implicate the same federalism concerns as a removal pursuant to 28 U.S.C. § 1441— given the breadth of section 1334(b)'s "related to" jurisdiction? This court has some doubts. However, as cited above, the Fifth Circuit has generally instructed that "[a]ny doubts as to the Court's subject matter jurisdiction should be resolved by remanding the case to state court. *Acuna*, 200 F.3d at 339.

In summary, while remand appears to be the correct result under the law, it is done here with grave misgivings. The Highland bankruptcy case has been pending more than two years.

---

[14] On the other hand, it should be noted here that "related to" bankruptcy subject matter jurisdiction is more ***limited*** in a post-confirmation context. The Fifth Circuit has stated that, in order for ***post-confirmation*** bankruptcy subject matter jurisdiction to exist, the dispute must bear on the interpretation, execution, or implementation of a confirmed plan. *E.g., Craig's Stores of Texas, Inc. v. Bank of Louisiana (In re Craig's Stores of Texas, Inc.),* 266 F.3d 388, 390-91 (5th Cir. 2001).

There are 3,100+ docket entries in the main bankruptcy case—which doesn't include the 17 adversary proceedings that have been filed so far (nor the countless appeals). This court is not only familiar with the facts and parties, but there is a mechanism in the bankruptcy rules (Fed. R. Bankr. Pro. 2004; *see also* Fed. R. Civ. Pro. 27) to seek pre-suit discovery. This court can relate to the predicament (and obvious frustration) that District Judge Folsom experienced in the Tobacco Litigation described earlier. Moreover, this court is familiar with the concept of claims-trading in bankruptcy (including the fact that, for decades now, since a rule change in the last century, no court approval and order is necessary unless the ***transferor*** objects). This court is also familiar with fiduciary duties of unsecured creditor committees and what may or may not be problematic. Moreover, Dondero's standing in filing the Rule 202 Proceeding would appear to be highly questionable and his motives highly suspect. If judicial efficiency and economy were the only considerations that mattered here, clearly remand would ***not*** be the correct result. In any event, while this court finds that the Rule 202 Proceeding is too inchoate, premature, and attenuated to provide the court with "related to" bankruptcy subject matter jurisdiction, if the Rule 202 Proceeding leads to any civil suit, this may ultimately be "related to" the Highland confirmed plan and the issue may be raised in that civil suit.

All other relief requested is denied.[15]

---

[15] Dondero has requested reimbursement of fees and expenses for having brought his motion to remand. *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). Central to the determination of whether attorneys' fees should be granted is the propriety of the defendant's decision to remove." *Garcia v. Amfels, Inc.*, 254 F.3d 585, 587 (5th Cir. 2001) (imposing fees and costs on defendants in the absence of persuasive case law). The Fifth Circuit generally holds that defendants will be liable for the fees and costs of improper removal unless their arguments in favor of removal are "objectively reasonable." *Renegade Swish, L.L.C. v. Wright*, 857 F.3d 692, 701 (5th Cir. 2017). Here, the court believes that the arguments of Alvarez and Farallon should be considered "objectively reasonable" since there was a dearth of authority in the bankruptcy context regarding Rule 202 petitions and the Fifth Circuit has not squarely addressed the removability to federal courts of Rule 202 petitions. Thus, the request for fees and expense reimbursement is denied.

**\* \* \* \* END OF MEMORANDUM OPINION AND ORDER \* \* \* \***